UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RACHEL LEIGH WILCOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:07CV1721 TIA |
| | ) | |
| GROUP HEALTH PLAN, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on Plaintiff Rachel Leigh Wilcox's Motion for Summary Judgment (Docket No. 20) and Defendant Group Health Plan, Inc.'s Motion for Summary Judgment (Docket No.22). All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiff Rachel Leigh Wilcox ("Wilcox") originally filed a one-count petition against Group Health Plan, Inc. ("GHP"), in the Circuit Court of St. Louis County, Missouri on August 31, 2007. (Docket No. 1). In the petition, Wilcox alleges that GHP had an obligation to provide benefits for medical treatment received by Wilcox, and that GHP refused to provide said benefits. GHP removed the instant action on October 10, 2007, contending that Wilcox's cause of action is preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132 ("ERISA") inasmuch as Wilcox is a beneficiary of an employee benefit plan and claims that GHP refused to pay certain benefits sought by Wilcox.

Both Wilcox and GHP have filed motions for summary judgment claiming that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. Wilcox has

responded to GHP's motion to which Wilcox has replied. GHP has responded to Wilcox's motion to which GHP has replied.

When deciding cross-motions for summary judgment, the approach is only slightly modified, as explained in International Brotherhood of Electrical Workers, Local 176 v. Balmoral Racing Club, Inc., 293 F.3d 402, 404 (7th Cir. 2002): "The usual Rule 56 standard applies to cross-motions for summary judgment. ... [S]ummary judgment is proper if the record demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law under the familiar standards of Fed. R. Civ. P. 56(c)." This Court must grant summary judgment if, based upon the pleadings, admissions, depositions and affidavits, there exists not genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and his entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita, 475 U.S. at 586-87; Fed. R. Civ. P. 56(c). Once the moving party has met his burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Where the unresolved issues are primarily legal rather than

factual, summary judgment is particularly appropriate. See Crain v. Board of Police Comm'rs, 920 F.2d 1402, 1405-06 (8th Cir. 1990). When reviewing the record in connection with a pending motion for summary judgment, the court may not weigh the evidence, determine credibility, or decide the truth of any factual matter in dispute. However, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249.

## The Undisputed Evidence before the Court

Viewing all facts and drawing all reasonable inferences in the light most favorable of the nonmoving party, A. Brod, Inc. v. SK & I Co., L.L.C., 998 F. Supp. 314, 320 (S.D.N.Y. 1998) the Court sets forth the following facts:

At the outset the Court notes that Wilcox failed to file a response to GHP's Statement of Undisputed Facts and therefore failed to controvert any of the facts contained therein as required by Local Rule 7-4.01. Local Rule 7-4.01 provides as follows:

> Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph numbers from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

GHP has submitted a Statement of Uncontroverted Material Facts in support of its Motion for Summary Judgment, in which GHP sets forth specific references to the evidentiary record. Neither Wilcox's Motion for Summary Judgment nor her Response to Defendants' Motion for Summary Judgment include a statement of material facts at all, let alone one that properly conforms to the requirements of the Local Rules and the Federal Rules of Civil Procedure. Wilcox does not

specifically respond to GHP's Statement of Uncontroverted Facts, but rather, Wilcox has filed an unverified response in which she refutes the allegations contained in GHP's motion. This, however, is insufficient to controvert GHP's statement of uncontroverted material facts inasmuch as any matters that are not specifically controverted by the nonmoving party are deemed admitted for purposes of summary judgment. Local Rule 7-4.01(E). Accordingly, Wilcox is deemed to have admitted all facts which were not specifically controverted by the evidentiary record and each of the material facts set forth in GHP's Statement of Uncontroverted Material Facts is deemed admitted. Libel v. Adventure Lands of Am., Inc., 482 F.3d 1028, 1033 (8th Cir. 2007).

In addition, Rule 56(e) of the Federal Rules of Civil Procedure requires the nonmoving party to respond to a Motion for Summary Judgment, but "may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e). This requires the nonmoving party to present "more than a scintilla of evidence." Patel v, U.S. Bureau of Prisons, 515 F.3d 807, 812 (8th Cir. 2008) (quoting Williams v. City of Carl Junction, 480 F.3d 871, 873 (8th Cir. 2007)). This Court "'is not obligated to wade through and search the entire record for some specific facts which might support the nonmoving party's claim.'" Holland v. Sam's Club, 487 F.3d 641, 644 (8th Cir. 2007) (quoting Pedroza v. Cintas Corp. No. 2, 397 F.3d 1063, 1069 (8th Cir. 2005)); see also Northwest Bank and Trust Co. v. First Illinois Nat'l. Bank, 354 F.3d 721, 725 (8th Cir. 2003) (Local rules "reflect [] the aphorism that it is the parties who know the case better than the judge," and "exist [] to prevent a district court from engaging in the proverbial search for a needle in the haystack.").

On June 23, 2003, Plaintiff Rachel Leigh Wilcox ("Wilcox") was airlifted to St. John's Mercy

Medical Center status post motor vehicle collision for urgent-emergent type wound repair performed by Dr. Patrick Morris. (Deft.s' Exh. 3, GHP-00221). Dr. Morris performed an open reduction of zygomatic arch fracture with external splint fixation as treatment for Wilcox's multiple facial trauma with right zygomatic arch depressed fracture. (Id. at GHP-00223).

Defendant Group Health Plan, Inc. ("GHP") is health maintenance organization. On and before June 23, 2003, Wilcox received health insurance through an employee benefit plan offered by GHP through her father's employer, Suntrup Automotive Group (the "Plan"). (Plft.'s Pet., at ¶ 2; David Lucas Aff., Exh. 1). The health insurance benefits available to Wilcox were governed by the Plan's Certificate of Coverage ("COC"). (Defts' Exh. A). As of August 31, 2007, Wilcox is no longer a member of the GHP Plan. (David Lucas Aff., Exh. 1 at ¶ 2).

A.  The Plan's Certificate of Coverage ("COC")

According to the terms of the Plan's Certificate of Coverage ("COC"), "The Plan covers only those Health Services and supplies that are (1) deemed Medically Necessary, (2) Authorized, if Authorization is required, and (3) not excluded under the exclusions and limitations set forth in Section 8." (Deft.s' Exh. 2; GHP-00352).

The COC grants GHP discretionary authority to interpret the agreement when making eligibility and benefit determinations as follows:

> **Discretionary Authority.** The Plan has the discretionary authority to interpret the Agreement in order to make eligibility and benefit determinations. The Plan also has the discretionary authority to make factual determinations as to whether any individual is entitled to receive any benefits under this Agreement. In no way shall this section limit any Member's rights as set forth in the Resolving Complaints and Grievances section or any rights permitted under law.

(Deft.s' Exh. 2; GHP-00448).

The COC as amended effective January 25, 2006, provides Dental Services are covered when determined by the Plan to be medically necessary and the criteria for coverage specifically delineated examples including if the benefit is "limited to the Emergency treatment of trauma resulting in fracture of jaw or laceration of mouth, tongue, or gums." (Deft.s' Exh. 2; GHP-00359; GHP-00442).[1] The COC provides in relevant part as Exclusions in Covered Services for Dental Services as follows:

> Not a Covered Service for the care, treatment, filling, removal, replacement, repair, or artificial restoration of the teeth (either natural or artificial), root canal, surgery for impacted teeth, surgery involving structures directly supporting the teeth, dental implants, or orthodontia.
>
> Removal of teeth due to an Injury, prior to radiation or for radionecrosis is also not a Covered Service.

(Id.).[2]

With respect to implants, the COC expressly excludes dental implants in Section 6 as follows: "There is no Coverage for either dental, cochlear (including services related to cochlear implants), or nanometric implants." (Deft.s' Exh. 2; GHP-00365).

Section 8 of the COC, Exclusions and Limitations, lists services that are excluded under the

---

[1]In comparison, the earlier version effective in 2003 provided as follows:

> Coverage benefits limited to the functional restoration of structures and treatment as a result of trauma resulting in fracture of jaw or laceration of mouth, tongue, or gums when services are provided within 24 hours of Injury.

(Defts.' Exh. 2; GHP-00359).

[2]In comparison, the earlier version effective in 2003 provided as follows:

> Not a Covered Service for the care, treatment, filling, removal, replacement, repair, or artificial restoration of the teeth (either natural or artificial), root canal, surgery involving structures directly supporting the teeth, or orthodontia.

(Deft.s' Exh. 2;GHP-00359).

Plan. (Deft.s' Exh. 2; GHP-00382). The COC specifically excludes coverage of not medically necessary services and cosmetic services and surgery in Section 8, Exclusions and Limitations, paragraphs no.1 and no.16. In relevant part, paragraph no.1 provides that "[a]NY service or supply that is not Medically Necessary." (Id.). Paragraph no.16 provides in relevant part as follows:

> Cosmetic Services and Surgery - Those Health Services, associated expenses, or complications resulting from Cosmetic Surgery are not Covered. Cosmetic procedures include, but are not limited to, pharmacological regimens, plastic surgery, and non-Medically Necessary dermatological procedures and Reconstructive Surgery. Cosmetic procedures are those procedures that improve physical appearance, but do not correct or materially improve a physiological function and are not Medically Necessary except when the procedure is needed for prompt repair of accidental injury or to improve the function of a congenital anomaly. Breast reconstruction following a Medically Necessary mastectomy is not considered Cosmetic and is a Covered Service.

(Deft.s' Exh. 2; GHP-00384).

Dental implants are excluded as a non-covered benefit in Section 8, Exclusions and Limitations, paragraph no. 20 and no. 43. In relevant part, paragraph no.20 provides as follows:

> Dental Surgery and Implants - Upper and lower jaw bone surgery (including that related to the temporomandibular and craniomandibular joint) is excluded. Dental implants are excluded. Removal of dentiginous cysts, mandibular tori, and odontoid cysts are excluded as they are dental in origin. Removal of teeth as a complication of radionecrosis is not a Covered Service.

(Deft.s' Exh. 2; GHP-00443).[3]

---

[3]In comparison, the earlier version of paragraph no. 20 effective in 2003 provided as follows:

> Dental Surgery and Implants - Upper and lower jaw bone surgery and dental implants (including that related to the temporomandibular and craniomandibular joint) except for Medically Necessary treatment of Acute traumatic Injury or cleft palate showing continued functional impairment. Dental implants are excluded.... Removal of teeth as a complication of radionecrosis is not a Covered Service.

(Deft.s' Exh. 2;GHP-00384-85).

In relevant part, paragraph no. 43 specifically relates to dental implants and expressly excludes coverage as follows:

> Implants- Health Services and associated expenses for implants are excluded except as specifically stated in Section 6 "Covered Services of the COC." There is no Coverage for repair or replacement for any otherwise Covered implant and Health Services related to repair or replacement, except when necessitated due to a change in Member's medical condition.... Dental Implants are not Covered.

(Deft.s' Exh. 2; GHP-00387).

B.     <u>GHP's Denial of Benefits and Grievance Process</u>

On September 18, 2006, the office of Dr. Patrick Morris, Wilcox's physician, faxed GHP seeking prior authorization of a treatment plan for outpatient surgery including Jaw Reconstruction/Unlisted Maxillofacial prosthetic ("Maxillofacial Prosthesis" or "Check Implant"), Keloid Scar Revision ("Dermabrasion/Scar Revison"), and Endosseous Implants ("Dental Implants"). (Deft.s' Exh. 3;GHP-00218).

In a letter dated September 22, 2006, GHP denied coverage based on the medical information supplied and the group contract's benefit specific limitations and exclusions for coverage in Section 8, Schedule of Exclusions & Limitations, S.E. 16 and 20. (Deft.s' Exh. 4;GHP-00079). Dr. Albert Yenchick, the medical director, explained that the current certificate excludes coverage for "cosmetic procedures that improve the physical appearance, but do not correct or materially improve a physiological function. You also have an exclusion for upper and lower jaw bone surgery and dental implants." (<u>Id.</u>). Dr. Yenchick apprised Wilcox that she has a right to appeal the decision and attached the appeal guidelines to the letter. (<u>Id.</u>).

In a letter dated November 13, 2006, Wilcox requested an appeal of the denial of benefits asserting that the requested procedures are not elective cosmetic procedures but "for continuing and necessary care to restore symmetry of her face, her ability to eat normal foods..., and to correct infections in scar tissue on her chin and cheek." (Deft.s' Exh. 5;GHP-00073).

As part of its first level appeal, the coordinator for the Medical Director Review for the Member Appeals Department requested that an independent dentist, Dr. Gary Edgar, review GHP's coverage determination to deny Wilcox's request for coverage for right maxilla check implant, scar revisions, dermabrasion, and scar revisions on January 10, 2007. (Deft.s' Exh. 6;GHP-00154). The denial found the requested services to be cosmetic pursuant to the COC and noted that "[m]ember has coverage for reconstructive surgery if the primary purpose is to restore normal physiological functions." (Id.). Based on Dr. Edgar's recommendation, the medical director approved the prosthetic implant for the maxilla ("Cheek Implant") as medically necessary due to the weakened functional aspect of thin bone covering the large maxillary sinus. (Deft.s'. Exhs. 7-8;GHP-00153,00144). The medical director approved the denial of the scar revision and dermabrasion finding the proposed procedures to be cosmetic and not medically necessary and finding the absence of recognizable functional impairment and documentation of infection. (Deft.s' Exh. 8;GHP-00144). After completion of the First Level Review, GHP overturned the denial of coverage for the Cheek Implant and authorized coverage for that procedure, but upheld the denial of coverage for the Dermabrasion/Scar Revision and the Dental Implants. (Deft.s' Exh. 9;GHP 00043-00045).

In a letter dated January 12, 2007, Dr. Daniel Murphy of GHP's Member Appeal Department apprised Wilcox of its decision to grant a one time administrative exception and to authorize payment for maxillofacial prosthesis/implant ("Check Implant") finding the procedure to be medically

necessary due to the weakened functional aspect. (Deft.s' Exh. 9;GHP-0043). Further, GHP directed Wilcox to have Dr. Morris' office contact the GHP pre-certification department with the date of surgery in order to update the service date. (Id.). Dr. Murphy explained GHP's decision to uphold the denial for coverage of dermabrasion and scar revision inasmuch as the procedures did not meet the medical criteria for coverage and were considered cosmetic due to no documentation of infection and an absence of recognizable functional impairment. (Id.;GHP-00044). Likewise, Dr. Murphy explained that GHP's decision to uphold the plan's denial of the request for coverage of dental implants at the First Level Appeal finding such implants specifically excluded as a benefit under the Plan. (Id.). GHP apprised Wilcox that she could request a second level hearing per her COC. (Id.).

In a fax letter dated February 4, 2007, Wilcox forwarded the appeal from GHP's denial of coverage for scar revision and microderm abrasion and the dental implants/reconstructive dental surgery. (Deft.'s Exh. 10;GHP-00040). With respect to the scar revision and microderm abrasion procedures, Wilcox argued that the procedures were not elective, cosmetic procedures inasmuch as Wilcox has been plagued by infections in the scars. (Id.). Further, Wilcox argued that since the procedures are the result of traumatic injury, they are a covered benefit. (Id.). With respect to the dental implants, Wilcox argued that the dental reconstructive work does not fall under the dental portion of the benefits but a covered benefit resulting from traumatic injury inasmuch as her speech has been impacted as well as her ability to consume a proper diet. (Id.). Wilcox thanked GHP for authorizing the "cheek implant." (Id.).

On February 7, 2007, as part of its Second Level Appeal, Dr. Yenchick forwarded the following question for independent outside review ("GHP Question for Independent Outside

Review") to be considered by Dr. Stuart Lehman, DMD, Dr. Robert Nersasian, DMD, and Dr. Earle Rosenberg, DMD.[4]

> The enclosed materials were used to make the initial denial determination. Our decision to deny was based on the following: The Dermabrasion and scar revision were determined to be not medically necessary and also cosmetic as it does not correct a physiological function but is intended to improve appearance. Based on the exclusion in the member's Certificate of Coverage and the definition of medical necessity and cosmetic surgery, do you agree? If you disagree, is there unconsidered or new information that does not support our determination?

(Deft.s' Exhs. Errata 11 and 12;GHP-00100;GHP-0085-0091). The Question for Independent Outside Review did not elicit opinions from the independent doctors regarding the Dental Implants. (Id.).

All three doctors did not agree with GHP's determination that the Dermabrasion/Scar Revision were "not medically necessary and also cosmetic as it does not correct a physiological function but is intended to improve appearance" based on the review of the medical records and the coverage guidelines. (Deft.s' Exhs. Errata 11 and 12;GHP-00100;GHP-0085-0091). Dr. Lehman disagreed with the denial noting that all of the treatment rendered is to repair damage caused by an accidental injury and thus not routine, cosmetic surgery. (Deft.s' Exh. 12;GHP-00085). Further, Dr. Lehman noted the repair of damage from the motor vehicle accident has functional as well as cosmetic components. (Id.). For example, Dr. Lehman opined that Wilcox is not a patient requesting routine placement of dental implants, but a patient who has lost teeth due to a traumatic injury and thus the procedures meet the guidelines for medical necessity and the guidelines for covered services such as reconstructive surgery for repair of the disfigurement. (Id. at GHP-00086). Likewise, Dr.

---

[4] All three review doctors are boarded in dentistry/oral & maxillofacial surgery. (Deft.s' Exh. 12; GHP-00085-00091).

- 11 -

Nersasian disagreed with the decision finding the scar revision and dermabrasion procedures should be considered medically necessary and covered under the benefits section of reconstructive surgery due to cicatrix formation and the entropion of her right orbit with resultant chronic conjunctivitis. (Id. at GHP-00088). Dr. Rosenberg also disagreed with the decision finding the requested repair of disfigurement caused by a motor vehicle accident inasmuch as the procedures are reconstructive and meet the guidelines as a covered benefit. (Id. at GHP-00090).

On February 28, 2007, the Second Level Appeal Committee of GHP heard argument regarding the denial of dental implants, dermabrasion, and scar revision procedures. (Deft.s' Exh. Errata 13;GHP-00021-00022). The committee unanimously decided to overturn the decision to deny the Dermabrasion/Scar Revision procedures finding the procedures to be medically necessary reconstructive surgery to repair functional defects resulting from an auto accident. (Id.). The committee unanimously decided to uphold the decision to deny the Dental Implants procedure finding the procedure to be excluded pursuant to the COC. (Id.).

In a letter dated March 1, 2007, Dr. Scott Spradlin of GHP's Member Appeal Department apprised Wilcox of the Second Level Appeal committee's decision to uphold the denial of coverage of the dental implants and overturn the denial of coverage of dermabrasion and scar revision. (Deft.s' Exh. Errata 16;GHP-0028-00029). GHP explained that the decision to deny the Dental Implants was based on the implants being specifically excluded as a benefit pursuant to the Plan's COC in Section 8, Exclusions and Limitations, #20 and #43. (Id.). Likewise, GHP noted that Dental Implants are excluded from coverage in Section 6, Covered Services, Implants and Related Health Services. (Id.). With respect to the Dermabrasion/Scar revision procedures, the committee decided to overturn the denial made by the First Level Appeal Panel and authorized payment for the Dermabrasion /Scar

Revision inasmuch as the procedures were determined to be medically necessary to repair a functional defect resulting from a previous injury. (Id.). GHP directed Wilcox to have Dr. Morris contact the GHP pre certification department with the date of surgery in order to have the referral updated. (Id.).

**Discussion**

At the outset, the Court notes that a cause of action for plan benefits under ERISA accrues when a plan fiduciary has "formally denied an applicant's claim for benefits or when there has been a repudiation by the fiduciary which is clear and made known to the beneficiary." Abdel v. U.S. Bancorp, 457 F.3d 877, 880 (8th Cir. 2006) (quoting Cavegn v. Twin City Pipe Trades Pension Plan, 223 F.3d 827, 829-30 (8th Cir. 2000)). The question of claim accrual is governed by federal common law. Id. ERISA requires a beneficiary to exhaust administrative procedures as a prerequisite to suit when exhaustion is mandated by the particular plan involved before bringing claims for wrongful denial to the Court. Wert v. Liberty Life Assur. Co. of Boston, Inc., 447 F.3d 1060, 1065 (8th Cir. 2006). To the extent Wilcox attempts to raise claims for other procedures, in particular additional Cheek Implants, the Court finds that such claims are not properly raised in the instant action and the Court lacks jurisdiction over such claims inasmuch as Wilcox has failed to exhaust the administrative procedure as required under the Plan. Likewise, with respect to the claims for Cheek Implant and Dermabrasion/Scar Revision, the Court finds that GHP ultimately approved coverage after initially denying coverage for these two procedures on January 12, 2007 for the maxillofacial prosthesis/implant ("Check Implant") and March 1, 2007 for the dermabrasion and scar revision. Thus, GHP is entitled to judgment as a matter of law regarding Plaintiffs' claims for benefits relative to the Cheek Implant and Dermabrasion/Scar Revision because the record shows that these procedures have previously been approved by GHP.

When construing the terms in an ERISA plan, this Court applies federal common law rules of contract law requiring that a contract "be interpreted as to give meaning to all its terms - presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous." Harris v. Epoch Group, 357 F.3d 822, 825 (8th Cir. 2004). The Eighth Circuit has determined that "[a]s a matter of federal common law, a court construing plans governed by ERISA should construe ambiguities against the drafter only if, after applying ordinary principles of construction, giving language its ordinary meaning and admitting extrinsic evidence, ambiguities remain." Delk v. Durham Life Ins. Co., 959 F.2d 104, 106 (8th Cir. 1992); see DeGeare v. Alpha Portland Indus., 837 F.2d 812, 816 (8th Cir. 1988) (stating that "[c]onstruing ambiguities against the drafter should be the last step of interpretation, not the first step.").

The parties agree that the insurance policy at issue is governed by ERISA and that the correct standard of review applied in this case governing GHP's decision denying Wilcox's claim is subject to deferential review for abuse of discretion. Shipley v. Ark. Blue Cross & Blue Shield, 333 F.3d 898, 901 (8th Cir. 2003). Generally, when a plan governed by ERISA gives the plan administrator discretionary authority to determine eligibility benefits, the Court reviews the administrator's decision for abuse of discretion. Firestone Tire & Rubber Co. v. Branch, 489 U.S. 101, 115 (1989). Under the abuse of discretion standard, "we look to see whether [the plan administrator's] decision was reasonable. In doing so, we must determine whether the decision is supported by substantial evidence, which is more than a scintilla, but less than a preponderance." Clapp v. Citibank, N.A. Disability Plan (501), 262 F.3d 820, 828 (8th Cir. 2001) (internal citations and quotation marks omitted). The Court would only reverse the plan administrator's decision if it is arbitrary and capricious. Groves v. Metropolitan Life Ins. Co., 438 F.3d 872, 874 (8th Cir. 2006). The Eighth

Circuit has stated that "[w]hen a plan administrator offers a reasonable explanation for its decision, supported by substantial evidence, it should not be disturbed." Ratliff v. Jefferson Pilot Fin. Ins. Co., 489 F.3d 343, 348 (8th Cir. 2007). Substantial evidence is defined as "more than a scintilla but less than a preponderance." Schatz v. Mutual of Omaha Ins. Co., 220 F.3d 944, 949 (8th Cir. 2000). "'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Fletcher-Merrit v. NorAm Energy Corp., 250 F.3d 1174, 1179 (8th Cir. 2001) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 217 (1938)). The Eighth Circuit has also stated that "[t]he discretionary decision of a plan administrator is not unreasonable merely because a different, reasonable interpretation could have been made." Ratliff, 489 F.3d at 348. Under this standard, the Court should consider only evidence that was before GHP when the claim was denied. Farfalla v. Mut. of Omaha Ins. Co., 324 F.3d 971, 974-75 (8th Cir. 2003). The Court may consider the quantity and quality of evidence before a plan administrator, and the Court should be hesitant to interfere with the administration of an ERISA plan. Groves, 438 F.3d at 875.

The summary plan description grants GHP, as "the Plan Administrator," discretionary authority to interpret the terms of the Plan, thus GHP's decision should not be overturned unless an abuse of discretion. "[W]e review the plan administrator's decision [to deny ERISA benefits] for an abuse of discretion" when "the benefit plan grants the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Groves, 438 F.3d at 874 (citation and internal quotation marks omitted); see also Weidner v. Fed. Express Corp., 492 F.3d 925, 928 (8th Cir. 2007) (stating that the deferential abuse of discretion standard generally applies if a plan administrator has express discretion to interpret benefit provisions and to determine benefit eligibility). Accordingly, the proper standard of review here is for abuse of discretion, because the

summary plan description grants GHP discretionary authority both to determine benefit eligibility and to construe the terms of the group contract.

Under this standard of review, the Court will uphold the plan administrator's decision as long as it is reasonable. "When a plan administrator offers a reasonable explanation for its decision, supported by substantial evidence, it should not be disturbed." Ratliff, 489 F.3d at 348 (internal quotation marks omitted). The Eighth Circuit has stated, "[t]he discretionary decision of a plan administrator is not unreasonable merely because a different, reasonable interpretation could have been made." Id. (internal citation and quotation marks omitted).

Applying the foregoing standard of review, the Court concludes the record establishes that GHP properly denied Wilcox's claim for dental implant benefits based on a reasonable interpretation of the Plan. The Plan terms clearly and unambiguously provide that dental implants are not covered by the Plan in at least four different sections. See COC Sections 6, 8, and 43 (Deft's Exh. 2;GHP-00365, 00387, 00442-43).[5] A review of these provisions shows that the plain language of the Plan

---

[5]With respect to implants, the COC expressly excludes dental implants in Section 6 as follows: "There is no Coverage for either dental, cochlear (including services related to cochlear implants), or nanometric implants." (Deft.s' Exh. 2; GHP-00365).

Dental implants are excluded as a non-covered benefit in Section 8, Exclusions and Limitations, paragraph no. 20 and no. 43. In relevant part, paragraph no.20 provides as follows:

> Dental Surgery and Implants - Upper and lower jaw bone surgery (including that related to the temporomandibular and craniomandibular joint) is excluded. Dental implants are excluded. Removal of dentiginous cysts, mandibular tori, and odontoid cysts are excluded as they are dental in origin. Removal of teeth as a complication of radionecrosis is not a Covered Service.

(Deft.s' Exh. 2; GHP-00443).

In relevant part, paragraph no. 43 specifically relates to dental implants and expressly excludes coverage as follows:

specifically excluded coverage for Dental Implants. Because the Plan specifically excludes coverage for Dental Implants, Wilcox's contention that dental implants are medically necessary is without merit inasmuch as medically necessary services are not Covered Services since they are excluded under the exclusions and limitation in the Plan. See Plan's Certificate of Coverage ("COC") (Deft's Exh. 2;GHP-00352). Accordingly, the Plan administrator did not abuse its discretion in denying Wilcox's claim for Dental Implants, and such decision is reasonable and based on the plain language of the Plan. Although Wilcox argues a different interpretation of the Plan, the administrator's decision should not be disturbed. Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 641 (8th Cir. 1997) (The general rule is that "review under the deferential standard is limited to evidence that was before"

---

> Implants- Health Services and associated expenses for implants are excluded except as specifically stated in Section 6 "Covered Services of the COC." There is no Coverage for repair or replacement for any otherwise Covered implant and Health Services related to repair or replacement, except when necessitated due to a change in Member's medical condition.... Dental Implants are not Covered.

(Deft.s' Exh. 2; GHP-00387).

The COC as amended effective January 25, 2006, provides Dental Services are covered when determined by the Plan to be medically necessary and the criteria for coverage specifically delineated examples including if the benefit is "limited to the Emergency treatment of trauma resulting in fracture of jaw or laceration of mouth, tongue, or gums." (Deft.s' Exh. 2; GHP-00359; GHP-00442). The COC provides in relevant part as Exclusions in Covered Services for Dental Services as follows:

> Not a Covered Service for the care, treatment, filling, removal, replacement, repair, or artificial restoration of the teeth (either natural or artificial), root canal, surgery for impacted teeth, surgery involving structures directly supporting the teeth, dental implants, or orthodontia.
>
> Removal of teeth due to an Injury, prior to radiation or for radionecrosis is also not a Covered Service.

(Id.).

the administrator).

Wilcox's argument that the COC covers dental implants if they are "Medically Necessary treatment of an Acute traumatic Injury" is misplaced. Wilcox relies on the former language of Exclusion 20, which was superseded by amendment on January 25, 2006. First, the amendment became effective before Wilcox first requested prior authorization for the procedure on September 8, 2006. Exclusion 20 does not contain the exception on which Wilcox relies regarding "Medically Necessary treatment of an Acute traumatic Injury." Even assuming *arguendo*, that the former version governs, this provision excluded coverage for dental implants. (Deft's Exh. 2;GHP-00384-85). Furthermore, Wilcox's contention that the dental implants constitute treatment of acute traumatic injury must fail inasmuch as the request for preauthorization was made three years after the injury on June 23, 2003. The Plan defines "acute" as "an Illness or Injury that is both severe and of recent onset." (Deft.s' Exh. 2; GHP-00313). Accordingly, the dental implants were not for an injury of recent onset as required by the Plan and thus did not fall into the exception in the former Exclusion 20 for "Medically Necessary treatment of Acute traumatic Injury" as argued by Wilcox. Likewise, the prior version of the COC explicitly provided that it only covers dental services in very narrow, defined circumstances, including "benefits limited to the functional restoration of structures and treatment as a result of trauma resulting in fracture of jaw or laceration of mouth, tongue or gums when services are provided within 24 hours of injury." (Deft.'s Exh. 2;GHP-00359). Thus, dental services would not fall within the scope of the Plan's coverage unless such services were provided within twenty-four hours after the injury.

The undersigned finds that there is no genuine issue of material fact regarding the Plan's determination that Dental Implants are not covered and as such, GHP is entitled to summary judgment on this claim. Under the abuse of discretion standard, the Court must uphold the Plan administrator's determination finding that Dental Implants are not covered inasmuch as it is a reasonable interpretation based upon the plain language of the Plan. The Plan administrator offered a reasonable explanation for its decision, supported by substantial evidence, and thus this decision should not be disturbed. See Ratliff., 489 F.3d at 348 (internal quotation marks omitted) ("[t]he discretionary decision of a plan administrator is not unreasonable merely because a different, reasonable interpretation could have been made.") (internal citation and quotation marks omitted). Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Rachel Leigh Wilcox's Motion for Summary Judgment (Docket No. 20) is DENIED.

**IT IS FURTHER ORDERED** that Defendant Group Health Plan, Inc.'s Motion for Summary Judgment (Docket No.22) is GRANTED.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

Dated this   31st    day of March, 2009.

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE